SO ORDERED.

SIGNED this 23 day of June, 2017.

_David M. Warren_
United States Bankruptcy Judge

_____

## UNITED STATES BANRKUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 15-06918-5-DMW |
| KRISTEN ANNE MURPHY | CHAPTER 7 |
| DEBTOR | |

| | |
|---|---|
| ROBERT RICHARD KOZEC, JR. | |
| PLAINTIFF | ADVERSARY PROCEEDING NO. |
| vs. | 16-00024-5-DMW |
| KRISTEN ANNE MURPHY | |
| DEFENDANT | |

## ORDER DENYING MOTION TO DISMISS

This matter comes before the court upon the Motion to Dismiss for Lack of Subject Matter

Jurisdiction ("Motion to Dismiss") filed by Kristen Anne Murphy ("Defendant") on March 20,

2017 and the Response to Motion to Dismiss ("Response") filed by Robert Richard Kozec, Jr.

("Plaintiff") on April 20, 2017.  After a review of the Motion to Dismiss, Response, and applicable

law, the court finds the matter ripe for adjudication without the need for a hearing and makes the following findings of facts and conclusions of law:

## BACKGROUND

On December 23, 2015, the Defendant filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.   On March 17, 2016, the Plaintiff initiated this adversary proceeding by filing a complaint against the Defendant.   In a Second Amended Complaint ("Complaint") filed on November 14, 2016, the Plaintiff asserted that, based upon pre-petition actions and occurrences, the Defendant is liable to the Plaintiff for malicious prosecution under North Carolina law ("Malicious Prosecution Claim").   The Plaintiff requested the court to enter a monetary judgment against the Defendant on the Malicious Prosecution Claim and declare that such debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) ("Dischargeability Claim"). Paragraph 3 of the Complaint contains the following allegation:

> This matter is a core proceeding pursuant to 28 USC §157, and the court has jurisdiction pursuant 28 USC §151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

On November 25, 2016, the Defendant filed an Amended Answer to Amended Complaint ("Answer"), requesting the court to dismiss the Malicious Prosecution Claim or alternatively find that any determined liability of the Defendant to the Plaintiff is dischargeable.  Paragraph 3 of the Answer provides that the "Defendant admits the allegations of Paragraph 3 of the Complaint."

On December 20, 2016, the court entered a Final Pretrial Order that was jointly submitted by the Plaintiff and the Defendant and contains the following provisions:

1.  All parties are properly before the court;

2.  The Court has jurisdiction of the parties and of the subject matter;

3. The proceeding is a core proceeding, and Counsel have agreed that this is a core proceeding pursuant to 28 U.S.C. § 157(c)(2) and agree that the Court may enter a final judgment . . . .

*Kozec v. Murphy (In re Murphy)*, Adv. Proc. No. 16-00024-5-DMW (Bankr. E.D.N.C. Dec. 20, 2016).

On February 14, 2017, the court conducted a bench trial of this adversary proceeding and ruled orally that the Defendant is liable to the Plaintiff for the amount of $8,274.94, and that this debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).[1] Pending entry of a written judgment and opinion, the Defendant filed the Motion to Dismiss and for the first time asserts that the court lacks subject matter jurisdiction over the Malicious Prosecution Claim. The court suspended entry of its judgment and opinion to allow it to consider and address the Motion to Dismiss.

The Defendant alleges that the Malicious Prosecution Claim is a personal injury tort claim, and the court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(5); therefore, the court must dismiss the adversary proceeding pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure, incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. In his Response, the Plaintiff vaguely denies that the Malicious Prosecution Claim is a personal injury tort claim yet does not disagree with the Defendant's contention that the court cannot adjudicate this claim. Instead, the Plaintiff suggests that the court rule on the Dischargeability Claim and either refer the Malicious Prosecution Claim to the United States

---

[1] The court's findings of fact which support its ruling are extensively set forth in a Memorandum Opinion to be entered forthwith after entry of this Order and will not be repeated herein, because they are not specifically relevant to the issues raised by the Motion to Dismiss.

3

District Court for the Eastern District of North Carolina or grant the Plaintiff relief from the automatic stay imposed by 11 U.S.C. § 362 to allow adjudication in state court.[2]

## DISCUSSION

The bankruptcy courts are somewhat of an anomaly within the federal judicial system established by the United States Constitution, and their jurisdiction over and authority to adjudicate various matters have been and continue to be broadly challenged and analyzed. "Although they are related concepts . . . the scope of the bankruptcy courts' subject matter jurisdiction, their statutory authority to hear and/or determine any particular matter, and their constitutional authority to do so, each are delineated by different statutory, constitutional, and/or judicial authorities." *Harvey v. Dambowsky (In re Dambowsky)*, 526 B.R. 590, 595 (Bankr. M.D.N.C. 2015). A review of the applicable history of federal bankruptcy law and procedure is helpful, if not essential, to understanding this interplay.

### History of Bankruptcy Courts in the United States

#### *Bankruptcy Act of 1898*

The Constitution allows Congress "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. art. I, § 8, cl 4. Congress first codified provisions for bankruptcy relief with the Bankruptcy Act of 1898 ("1898 Act"), also known as the Nelson Act. Under the 1898 Act, the federal district courts possessed jurisdiction over bankruptcy matters but would generally refer these matters to "referees" who were employed upon appointment by the district courts for two year terms. The referees, often called the "bankruptcy court," held summary jurisdiction over and could enter final judgment on matters involving the

---

[2] The Plaintiff, unaware of the Defendant's bankruptcy petition, initially filed a complaint against the Defendant for the Malicious Prosecution Claim with the District Court for Johnston County, North Carolina. Upon learning of the Defendant's bankruptcy, the Plaintiff stayed this state court proceeding.

administration of the bankruptcy estate; however, plenary jurisdiction over disputes arising out of or related to the bankruptcy proceeding was exercised by the district judges.  This jurisdictional scheme of the 1898 Act is succinctly described as follows:

> The Bankruptcy Act of 1898 vested original jurisdiction over all bankruptcy matters in the United States District Courts. In turn, the district judges referred certain matters to bankruptcy referees. There were two main types of bankruptcy matters under the Act of 1898: "proceedings" and "controversies." "Proceedings" generally involved the administration of the bankrupt's estate and were solely within the province of the bankruptcy court. "Controversies" were collateral disputes arising out of bankruptcy proceedings. These matters involved the trustee and third parties and could be heard by either the bankruptcy court or by a non-bankruptcy court that had jurisdiction. While proceedings fell within the "summary jurisdiction" of the bankruptcy court, controversies sometimes required the court to exercise "plenary jurisdiction." The two types of jurisdiction differed in the following manner. Matters within the summary jurisdiction of the bankruptcy court could be adjudicated through the use of more expeditious modes of procedure, with the court sitting in equity. The district court *qua* bankruptcy court could hear these matters; however, a bankruptcy referee usually rendered final judgment on such matters, subject only to "review" by the district court. In contrast, plenary jurisdiction was exercised only by the district court or state courts, following their general rules of procedure.  According to some estimates, as much as fifty percent of all litigation under the Act of 1898 concerned whether the matter was within the bankruptcy court's summary jurisdiction.

*Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1176 (3rd Cir. 1996) (quoting Thomas S. Marion, *Core Proceedings and "New" Bankruptcy Jurisdiction*, 35 DePaul L. Rev. 675, 676-77 (1986)).

### Bankruptcy Reform Act of 1978

Congress completely revamped its bankruptcy laws with the passage of the Bankruptcy Reform Act of 1978 ("1978 Act").  Under the 1978 Act, Congress removed the referee "bankruptcy courts" from the umbrella of the district courts and in each district created a distinct and separate bankruptcy court as an adjunct of the district court.  This action was set forth in Title 28 of the United States Code under Chapter 6 titled "Bankruptcy Courts."  This chapter began with 28 U.S.C. § 151 titled "Creation and composition of bankruptcy courts" which provided as follows:

> (a) There shall be in each judicial district, as an adjunct to the district court for such district, a bankruptcy court which *shall be a court of record* known as the United States Bankruptcy Court for the district.

> (b) Each bankruptcy court shall consist of the bankruptcy judge or judges for the district in regular active service.  Justices or judges designated and assigned shall be competent to sit as judges of the bankruptcy court.

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 201(a), 92 Stat. 2549, 2657 (1978) (codified as 28 U.S.C. § 151), *amended by* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) (current version at 28 U.S.C. § 151) (emphasis added).  The 1978 Act provided that like federal district judges, bankruptcy judges were appointed by the President of the United States; however, unlike other presidential appointees, the bankruptcy judges were not afforded the protections of life tenure and salary non-diminution provided for in Article III of the Constitution.[3]   Rather, the bankruptcy judges serve for fourteen year terms, subject to removal for cause, and receive a designated annual salary subject to adjustment under federal law.

The 1978 Act provided the district courts with original jurisdiction over bankruptcy cases and proceedings; however, the newly created bankruptcy courts were to exercise independently this jurisdiction, and they held exclusive jurisdiction over a debtor's property.  Both the district court and the bankruptcy court could permissively abstain from hearing a particular proceeding.  This dual jurisdictional scheme was set forth as follows:

> (a) Except as provided in susbection [sic] (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original

---

[3] "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.  The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."  U.S. CONST. art. III, § 1.

but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 241(a), 92 Stat. 2549, 2668-69 (1978)

(codified as 28 U.S.C. § 1471), *amended by* Bankruptcy Amendments and Federal Judgeship Act

of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) (current version at 28 U.S.C. § 1334).

*Northern Pipeline Construction Company v. Marathon Pipe Line Company*

In 1982, the United States Supreme Court considered a creditor's challenge to the constitutionality of the 1978 Act's jurisdictional provisions. In *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L.Ed.2d 598 (1982), the appellee filed a Chapter 11 petition and initiated in the bankruptcy court an adversary proceeding against the appellant, seeking damages under state law for breach of contract and warranty, misrepresentation, coercion, and duress. The appellant moved for dismissal, contending that the 1978 Act unconstitutionally conferred Article III judicial power upon judges who lacked life tenure and salary protection.

The Supreme Court first noted that the Constitution unambiguously requires that judicial power lie with an independent judiciary, and "[n]ext to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support . . . ." *Id.* at 60, 102 S. Ct. at 2865, 73 L.Ed.2d 598. (quoting The Federalist No. 79, p. 491 (H. Lodge ed.

7

1888) (A. Hamilton)).  The bankruptcy judges whose offices were created by the 1978 Act are undoubtedly not Article III judges. *Id.* at 60-61, 102 S. Ct. at 2866, 73 L.Ed.2d 598.  While Congress may create specialized adjunct courts to make factual determinations regarding a particularized area of law, the 1978 Act gave bankruptcy courts the power to adjudicate not only traditional matters of bankruptcy but of rights not created by Congress.  The Supreme Court agreed with the appellant and held that the 1978 Act "has impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct.  Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts." *Id.* at 87, 102 S. Ct. at 2880, 73 L.Ed.2d 598.

*Bankruptcy Amendments and Federal Judgeship Act of 1984*

In response to *Marathon*, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") to address the limitations of power possessed by the bankruptcy courts created by Congress under Article I of the Constitution.  BAFJA did not make bankruptcy judges Article III judges but reverted to a structure similar the historical referee system, with bankruptcy judges appointed by applicable circuit court of appeals rather than the President. *See* 28 U.S.C. § 152(a)(1).  Bankruptcy courts are no longer independent courts of record; rather, the term "bankruptcy court" is a pseudonym for the bankruptcy judges serving as judicial officers of a district court.  To reflect this distinction, Chapter 6 of Title 28 was renamed from "Bankruptcy Courts" to "Bankruptcy Judges."  Section 151 of this chapter was renamed from "Creation and composition of bankruptcy courts" to "Designation of bankruptcy courts" and currently provides that—

> [i]n each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be *known as* the bankruptcy court for that

district.  Each bankruptcy judge, as a judicial officer of the district court, *may exercise the authority conferred under this chapter* with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.

28 U.S.C. § 151 (emphases added).

BAFJA replaced the jurisdictional provisions of the 1978 Act in 28 U.S.C. § 1471 with new ones set forth in 28 U.S.C. § 1334, which is void from any mention of the bankruptcy courts and currently provides in part as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases in title 11.

28 U.S.C. § 1334.  Although only the district courts possess jurisdiction over bankruptcy cases and proceedings, a district court may refer *all* this jurisdiction to its bankruptcy judges that serve as officers of that district court:  "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

Regardless of referred jurisdiction, a bankruptcy judge's ability to adjudicate a particular proceeding is limited by 28 U.S.C. § 157, and a bankruptcy judge's absolute authority to adjudicate fully a proceeding hinges upon whether it is a "core" proceeding:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158[4] of this title.

---

[4] Section 158 governs appeals of orders, judgments, and decrees entered by bankruptcy judges and provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . ." 28 U.S.C. § 158(a).  Unlike a district court's jurisdiction under 28 U.S.C. § 1334, this appellate jurisdiction may not be referred to bankruptcy

28 U.S.C. § 157(b)(1).  A non-exclusive list of what constitutes a core proceeding is set forth in 28 U.S.C. § 157(b)(2).

While the converse of 28 U.S.C. § 157(b) suggests that a bankruptcy judge may not adjudicate a non-core proceeding, a bankruptcy judge may nevertheless hear and determine a non-core proceeding that is related to a bankruptcy case if all parties to the proceeding consent.  Absent this consent, the bankruptcy judge may only hear the non-core, related proceeding and shall submit proposed findings of fact and conclusions of law to the district court, with final order or judgment to be entered by an Article III district judge.  Section 157 explains this allocation of authority between the bankruptcy judges and the district judges as follows:

> (1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c).

### *Stern v. Marshall*

Several years after the enactment of BAFJA,[5] the Supreme Court again considered constitutional limits upon the non-Article III bankruptcy judges' ability to adjudicate matters of

---

judges; therefore, absent establishment of a bankruptcy appellate panel under 28 U.S.C. § 158(b), only a district judge will review an appeal from an order, judgment, or decree of a bankruptcy judge.

[5] While Congress has amended its bankruptcy laws several times since the enactment of BAFJA, most substantially with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the bankruptcy related provisions in Title 28 have not changed significantly.  The exception is the addition of 28 U.S.C. § 157(e) which

private right. *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011).[6]  The Court held that despite having statutory authority under 28 U.S.C. § 157(b)(2)(C),[7] a bankruptcy judge lacks constitutional authority to adjudicate a state law counterclaim by the debtor against an entity which files a proof of claim in case unless that counterclaim "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.*, 564 U.S. at 499, 131 S. Ct. at 2618, 180 L.Ed.2d 475.

The Defendant's Motion only alleges that the court lacks subject matter jurisdiction over the Malicious Prosecution Claim; however, any subject matter jurisdiction is inherently subject to the court's statutory and constitutional authority to hear and determine the proceeding.  While this authority was not expressly challenged, the court believes *sua sponte* consideration of its authority in addition to its subject matter jurisdiction is appropriate.

### Subject Matter Jurisdiction

Subject matter jurisdiction is by definition a court's power to adjudicate a controversy of a specific subject matter.  Although the Defendant challenges the court's jurisdiction over the

---

allows a bankruptcy judge to conduct a jury trial if designated by the district court and with the consent of all parties. This provisions was added in response to the United States Supreme Court's holding that Congress may not strip parties to a proceeding involving a "private right" of their Seventh Amendment right to a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L.Ed.2d 26 (1989).  The right to a jury trial with regard to a personal injury tort or wrongful death claim is specifically protected in 28 U.S.C. § 1411, but the court's ability to conduct a jury trial of this adversary proceeding is irrelevant as neither party requested a trial by jury.

[6] This landmark case stems from the tabloid sensational May-December marriage between Vickie Lynn Marshall, better known as Anna Nicole Smith, and J. Howard Marshall.  After J. Howard's death in 1995, Vickie and E. Pierce Marshall, J. Howard's son, feuded over the disposition of J. Howard's fortune for many years and in many courts, including the bankruptcy court where Vickie filed for Chapter 11 relief.  By the time the bankruptcy court proceeding reached the Supreme Court on E. Pierce's challenge of the bankruptcy judge's authority to enter judgment, both Vickie and E. Pierce had died under unexpected and unfortunate circumstances.  Fittingly, Chief Justice Roberts began the Court's opinion with the words of Charles Dickens: "This 'suit has, in course of time, become so complicated, that . . . no two . . . lawyers can talk about it for five minutes, without coming to a total disagreement as to the premises.  Innumerable children have been born into the cause; innumerable young people have married into it;' and, sadly, the original parties 'have died out of it.'  A 'long procession of [judges] has come in and gone out' during that time, and still the suit 'drags its weary length before the Court'" *Stern*, 564 U.S. at 468, 131 S. Ct. at 2600, 180 L.Ed.2d 475 (quoting C. Dickens, Bleak House, in 1 Works of Charles Dickens 4-5 (1891)).

[7] This section provides that core proceedings include "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).

Malicious Prosecution Claim, the court has the authority to determine whether it in fact has subject matter jurisdiction. *Chicot Co. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S. Ct. 317, 319, 84 L.Ed. 329 (1940).

In the federal judicial system, the lower courts are "all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed." *Id.* The "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Included within the laws of the United States is the Bankruptcy Code set forth in Title 11 of the United States Code, and as explained *supra*, the district court's relevant subject matter jurisdiction is established by 28 U.S.C. § 1334 and may be referred to bankruptcy judges under 28 U.S.C. § 157(a). The United States Court of Appeals for the Fourth Circuit explains this jurisdictional structure as follows:

> Two statutes govern jurisdiction over bankruptcy proceedings, 28 U.S.C. §§ 157 and 1334. Under the latter statute, district courts "have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases until [sic] title 11." § 1334(a), (b). Under § 157, district courts can refer § 1334(a) and (b) cases to bankruptcy courts. § 157(a).

*Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)*, 600 F.3d 310, 315 (4th Cir. 2010). Upon proper referral of a matter over which a district court has jurisdiction under 28 U.S.C. § 1334, the district judges' and the bankruptcy judges' jurisdiction over that matter is one and the same. The bankruptcy judges, which are officers of the district court that holds jurisdiction, possess no more and no less subject matter jurisdiction than the district judges; rather, "the application of § 157(b) and (c) determines the bankruptcy court's authority to act once that jurisdiction is established. *Id.* (citing *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 839 n. 3 (4th Cir. 2007)).

In this district as well as most, if not all, other federal judicial districts, the district court entered a general order or reference which refers its subject matter jurisdiction over "any and all

cases under Title 11 and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . *to the bankruptcy judges* for the Eastern District of North Carolina." Referral of Bankruptcy Matters to Bankruptcy Judges (E.D.N.C. Aug. 3, 1984) (emphasis added). Under 28 U.S.C. §§ 157(a) and 1334 and the district court's general order of reference, this court, which is merely a collection of the appointed bankruptcy judges for this district, has subject matter jurisdiction of (1) cases *under* the Bankruptcy Code, (2) proceedings *arising under* the Bankruptcy Code, (3) proceedings *arising in a case under* the Bankruptcy Code, and (4) proceedings *related to a case under* the Bankruptcy Code. Whether the court has subject matter jurisdiction of the Malicious Prosecution Claim is not dependent on whether it is a "personal injury tort" claim.

### The Court has Subject Matter Jurisdiction of this Adversary Proceeding which Arises in the Defendant's Bankruptcy Case

A bankruptcy petition and order for relief create a case which is under the Bankruptcy Code, thus the court has subject matter jurisdiction over the administration all such cases filed in this district, including the Defendant's Chapter 7 case. The court's definitive jurisdiction over a bankruptcy case does not automatically extend to all proceedings that may be presented to it within the case, and the court must look to the nature of the proceeding to determine whether it arises under the Bankruptcy Code or arises in or is related to the bankruptcy case.

"A proceeding 'arises under' Title 11 if it invokes a 'substantive right created by the Bankruptcy Code.'" *L. Ardan Dev. Corp. v. Touhey (In re Newell)*, 424 B.R. 730, 733 (Bankr. E.D.N.C. 2010) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). "Proceedings 'arising in' a case under Title 11 are those that 'are not based on any right expressly created by title 11, but nevertheless, would have no existence outside the bankruptcy.'" *Id.* at 733 (quoting *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996) (quoting *Wood*, 825 F.2d at 97)).

This court once held that a determination of dischargeability under 11 U.S.C. § 523 arises under the Bankruptcy Code. *In re Toussaint*, 259 B.R. 96, 101 (Bankr. E.D.N.C. 2000) (citing *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 919-20 (Bankr. E.D. Cal. 1995)).  The *Dambowsky* court observed that the *Franklin* court cited an edition of Collier on Bankruptcy that noted non-dischargeability actions "arise under" the Bankruptcy Code; however, more recent editions conclude that these actions "arise in" bankruptcy cases. *Dambowsky*, 526 B.R. at 599.  Following *Dambowsky*, this court later held that "[a] dischargeability proceeding, *including the resulting liquidation of a debt*, falls within a bankruptcy court's subject matter jurisdiction as 'arising in' a case under title 11 . . . ." *Baum v. Baum (In re Baum)*, Adv. Proc. No. 14-00044-5-DMW, 2016 WL 5360709, at *10, 2016 LEXIS Bankr. 3465, at *29 (Bankr. E.D.N.C. Sept. 23, 2013) (citing *Dambowsky*, 526 B.R. at 601-02) (emphasis added).

The United States Bankruptcy Court for the District of Idaho explained this consolidated jurisdiction as follows:

> At times the debt at issue has previously been liquidated; other times it has not.  In the case of an unliquidated debt, the bankruptcy court must necessarily determine liability and damages in order to establish the underlying debt.  Adjudication of the underlying claim, which arises under nonbankruptcy law, becomes part and parcel of the dischargeability determination and thus integral to restructuring the debtor-creditor relationship.

*Dambowsky*, 526 B.R. at 599-600 (quoting *Stanborough v. Valle (In re Valle)*, 469 B.R. 35, 43 (Bankr. D. Idaho 2012)).  The United States Bankruptcy Court for the Southern District of Florida similarly recognized that—

> [i]n a complaint to determine dischargeability of a debt there are always two issues—one is a determination of what is the debt (although sometimes this has already been resolved by a state court) and the other is the determination whether that debt is non-dischargeable . . . the two issues are intertwined, no matter in which order and however resolved . . . .

14

*Markwood Invs. Ltd. v. Neves (In re Neves)*, 500 B.R. 651, 660 (Bankr. S.D. Fl. 2013) (citations omitted).

The Malicious Prosecution Claim is based upon state tort law and not upon any right created by the Bankruptcy Code.  The Malicious Prosecution Claim is based upon pre-petition occurrences, and the Plaintiff planned to adjudicate the claim in state court until he learned of the Defendant's bankruptcy filing.  Standing alone, the Malicious Prosecution Claim alone does not arise under the Bankruptcy Code or arise in the Defendant's bankruptcy; however, when entwined as it is with the Dischargeability Claim, the court has jurisdiction over the entire adversary proceeding as arising in the Defendant's Chapter 7 case.

Alternatively, if the court did not consider the Dischargeability Claim and the Malicious Prosecution Claim as a single proceeding for jurisdictional purposes, the court would still have jurisdiction over the Malicious Prosecution Claim as being related to the Defendant's bankruptcy case.  The Supreme Court believes that "'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate,' and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate . . . ." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L.Ed.2d 403 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)) (other citations omitted).  The Supreme Court thus recognized the *Pacor* test which had been previously adopted by the United States Court of Appeals for the Fourth Circuit in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th  Cir. 1986).

The *Pacor* test provides that—

[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably*

15

> *have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625-26 (4th Cir. 1997) (quoting *Pacor*, 743 F.2d at 994) (emphasis in original).  "[T]he *Pacor* test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient to confer jurisdiction." *Id.* at 626.

The United States Bankruptcy Court for the District of Massachusetts interpreted *Celotex* and *Pacor* to suggest that "a proceeding that does not impact the estate directly, but nevertheless impacts rights created by the bankruptcy code, may also constitute a 'related to' matter . . . [and because] the scope of the underlying debt is often at issue in dischargeability proceedings, the liquidation of the debt is, if not a core matter, at least 'related to' the dischargeability action." *Chen v. Huang (In re Huang)*, 509 B.R. 742, 753 n. 14 (Bankr. D. Mass. 2014).[8]  Similarly, the United States Bankruptcy Court for the District of Nevada concluded that "'related to' jurisdiction is very broad, 'including nearly every matter directly or indirectly related to the bankruptcy." *See also Sasson v. Sokoloff (In re Sasson),* 424 F.3d 864, 868 (9th Cir.2005) (finding that "'related to' jurisdiction is very broad, 'including nearly every matter directly or indirectly related to the bankruptcy.'") (quoting *Mann v. Alexander Dawson (In re Mann),* 907 F.2d 923, 926 n. 4 (9th

---

[8] The *Huang* court nevertheless held, as does this court, that a dischargeability determination and liquidation of the relevant debt are not severable, and "even if the facts necessary to determine the amount or validity of the underlying debt are separable from those related to the requisites for nondischargeability, both the Bankruptcy Code and the jurisdictional statute treat the determination of the amount of any nondischargeable debt (as well as the extent of the debtor's liability on that debt) as an essential element to be determined by, and within the jurisdiction of, the bankruptcy court." *Huang*, 509 B.R. at 754.

Cir.1990)).  The Malicious Prosecution Claim is related to the outcome of the Defendant's bankruptcy case as the Defendant's "fresh start" will certainly be impacted if she is determined to be liable to the Plaintiff for a non-dischargeable amount; therefore, the court also has "related to" jurisdiction over Malicious Prosecution Claim.

*28 U.S.C. § 157(b)(5) Does Not Affect Subject Matter Jurisdiction*

The Defendant, asserting that the Malicious Prosecution Claim is a "personal injury tort," challenges the court's subject matter jurisdiction based upon a separate subsection of 28 U.S.C. § 157 which provides that—

> [t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).  This statute dictates appropriate venues for adjudication of a personal injury tort or wrongful death claim, and the Defendant suggests that the statute's use of the word *shall* coupled with reference to the *district court* divests the bankruptcy court of any jurisdiction over personal injury tort actions.

The Defendant's position is not unprecedented, and prior to 2011, several courts held that 28 U.S.C. § 157(b)(5) deprives the bankruptcy courts of jurisdiction over personal injury tort and wrongful death claims.  The Defendant relies predominantly upon a case in which the neighboring United States District Court for the Middle District of North Carolina held that personal injury tort claims must be tried in the district court and not the bankruptcy court. *In re Nifong*, Case No. 08-80034C-7D, 2008 WL 2203149, at *2, 2008 Bankr. LEXIS 1608, at *5 (Bankr. M.D.N.C. May 27, 2008) (citing *Leatham v. Von Volkmar (In re Von Volkmar)*, 217 B.R. 561, 565 (Bankr. N.D. Ill. 1998) (holding that 28 U.S.C. § 157(b)(5) flatly prohibits a bankruptcy court from adjudicating and liquidating personal injury claims even when brought within a dischargeability proceeding)).

*See also Goldschmidt v. Erickson (In re Erickson)*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005) (holding that the bankruptcy court lacked jurisdiction to adjudicate a personal injury tort claim); *Rizzo v. Passialis (In re Passialis)*, 292 B.R. 346, 351 (Bankr. N.D. Ill. 2003) (holding that pursuant to 28 U.S.C. § 157(b)(5) the court had no jurisdiction to determine a personal injury tort claim underlying a dischargeability complaint); *Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 441 (Bankr. S.D.N.Y. 1989) (holding that bankruptcy courts do not have subject matter jurisdiction over personal injury tort and wrongful death claims); *Boyer v. Balanoff (In re Boyer)*, 93 B.R. 313, 317 (Bankr. N.D.N.Y. 1988) (finding that 28 U.S.C. § 157(b)(5) requires the district court to maintain jurisdiction over personal injury tort and wrongful death claims).

In 2008, the United States Bankruptcy Court for the District of Nevada rejected the position of many of its colleagues that 157(b)(5) creates a jurisdictional bar that prevents the bankruptcy court from hearing personal injury tort claims, finding the cases "unsupported by any logical analysis." *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 910 (Bankr. D. Nev. 2008). Giving plain meaning to the statute, the *Smith* court eloquently reasoned that—

> it is significant that Section 157(b)(5) is not worded as Congress might normally construct a restrictive jurisdictional statute. It does not say, for example, "Personal injury and wrongful death claims shall be heard exclusively by the district court, and not by the bankruptcy court" or "Notwithstanding Section 157(a), jurisdiction of personal injury and wrongful death claims shall not be referred to the bankruptcy court." . . . Rather, Section 157(b)(5) refers only to where a matter may be tried (presumably after all pretrial matters have been resolved, and presumably resolved by a court with jurisdiction), and then provides only that the location of such trials "shall [be] order[ed]" by the district court to be in the district court. This wording is a far cry from a grant of exclusive jurisdiction to the district court of all personal injury and wrongful death claims.

*Id.* at 911.

In 2011, within the contexts of *Stern*, the Supreme Court essentially nullified *Nifong* and similar cases by holding, similar to the *Smith* court, that 28 U.S.C. § 157(b)(5) is not jurisdictional

but speaks only to the proper venues for trial of a personal injury tort or wrongful death claims: "Section 157(b)(5) does not have the hallmarks of a jurisdictional decree. To begin, the statutory text does not refer to either district court or bankruptcy court 'jurisdiction,' instead addressing only where personal injury tort claims 'shall be tried.'" *Stern*, 564 U.S. at 480, 131 S. Ct. at 2607, 180 L.Ed.2d 475 (2011) (citation omitted). In light of *Stern* and in agreement with *Smith*, the court rejects the Defendant's position that 28 U.S.C. § 157(b)(5) deprives it of jurisdiction of the Malicious Prosecution Claim, assuming it is in fact a personal injury tort claim.

If Congress intended that bankruptcy judges not have jurisdiction over personal injury tort and wrongful death claims over which the district court has jurisdiction under 28 U.S.C. § 1334, then Congress could have excluded these types of claims from referral under 28 U.S.C. § 157(a). Alternatively, Congress could have mandated within 28 U.S.C. § 157(d)[9] that the district court withdraw its reference of personal injury tort and wrongful death claims. With neither of these exceptions provided, if a district court has jurisdiction over a personal injury tort or wrongful death claim under 28 U.S.C. § 1334, then so do its bankruptcy judges by referral under 28 U.S.C. § 157(a). The court will further consider whether 28 U.S.C. § 157(b)(5), while not jurisdictional, deprives it of authority to adjudicate the Malicious Prosecution Claim.

<u>Statutory Authority</u>

*28 U.S.C. § 157(b)(5) Does Not Prevent a Bankruptcy Judge*
*from Adjudicating a Personal Injury Tort or Wrongful Death Claim*

Despite the Supreme Court's holding in *Stern* that 28 U.S.C. § 157(b)(5) is not jurisdictional, many courts, including this one, have continued to interpret the statute to require

---

[9] "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

that a personal injury tort or wrongful death claim be tried in the district court, believing "district

court" to mean by a district judge.  For instance, the Defendant cites a recent, post-*Stern* case in

which this court postulates that pursuant to the procedural limitations of 28 U.S.C. § 157(b)(5),

"'personal injury tort' claims must be tried in the district court." *In re Abbott*, Case No. 15-06822-

5-SWH, 2016 WL 6892456, at *2, 2016 Bankr. LEXIS 4047, at *5 (Bankr. E.D.N.C. Nov. 22,

2016) (citing *Stern*, 564 U.S. at 479, 131 S. Ct. at 2594, 180 L.Ed.2d 475; *Yellow Sign, Inc. v.

Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.*, 466 B.R. 750, 777 (Bankr.

M.D.N.C. 2012)).  This consideration is not binding precedent but merely a sidebar to the court's

decision to grant a creditor relief from the automatic stay to continue prosecution of a civil action

that was pending in the United States District Court for the Eastern District of North Carolina at

the time of the debtor's petition.  Upon deeper analysis, the court rejects the notion that a

bankruptcy judge can never adjudicate a personal injury tort or wrongful death claim, finding 28

U.S.C. § 157(b)(5) to be perhaps the most misunderstood bankruptcy related statute within Title

28.

To fully understand 28 U.S.C. § 157(b)(5), one must focus on the meaning of the term

"district court" as used in that statute and throughout the bankruptcy related provisions of Title 28.

The 1978 Act created the bankruptcy courts as courts of record in the United States; however,

BAFJA clearly removed this judicial independence and simply designated the term "bankruptcy

court" to refer to a district's bankruptcy judges, serving as judicial officers of the district court and

together compromising a unit of the district court. *See* 28 U.S.C. § 151.  Although the bankruptcy

courts are not separate, independent courts but merely units of the district courts, they generally

operate independently and may even have their own clerk of court, contributing to the confusion.

*See* 28 U.S.C. § 156(b).[10]   If the bankruptcy judges obtain subject matter jurisdiction over a personal injury tort or wrongful death claim through referral under 28 U.S.C. § 157(a), then the term "district court" within 28 U.S.C. § 157(b)(5) logically encompasses the "bankruptcy court." This concept is freely recognized within other sections of Title 28.

Under the 1978 Act, the venue provisions for bankruptcy matters provided that "a case under title 11 may be commenced in the *bankruptcy court* for a district . . ." and "a proceeding arising in or related to a case under title 11 may be commenced in the *bankruptcy court* in which such case is pending." Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 241(a), 92 Stat. 2549, 2669 (1978) (codified as 28 U.S.C. §§ 1472, 1473(a)), *amended by* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) (current versions at 28 U.S.C. §§ 1408, 1409(a)) (emphases added).   Today, as a result of BAFJA's removal of bankruptcy courts as independent courts of record, the relevant statutes provide that "a case under title 11 may be commenced in the *district court* for the district . . . ." and "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the *district court* in which such case is pending." 28 U.S.C. §§ 1408, 1409(a) (emphases added).   Despite the use of term "district court," no one can dispute that these cases and proceedings are actually commenced in the "bankruptcy court" having referral jurisdiction under 28 U.S.C. § 157(a), yet analogy to use of "district court" in 28 U.S.C. § 157(b)(5) is repeatedly overlooked.

---

[10] "Upon certification of the judicial council of the circuit involved and to the Director of the Administrative Office of the United States Courts that the number of cases and proceedings pending within the jurisdiction under section 1334 of this title within a judicial district so warrants, the bankruptcy judges for such district may appoint an individual to serve as clerk of such bankruptcy court.  The clerk may appoint, with the approval of such bankruptcy judges, and in such number as may be approved by the Director, necessary deputies, and may remove such deputies with the approval of such bankruptcy judges." 28 U.S.C. § 156(b).

Similarly, the term "bankruptcy court" was used in the 1978 Act's provisions for abstention of jurisdiction under former 28 U.S.C. § 1471[11] but does not appear within the current abstention provisions contained in 28 U.S.C. § 1334.[12]  Although 28 U.S.C. § 1334(c) provides for permissive or mandatory abstention by the district court, bankruptcy judges regularly entertain requests for abstention under this subsection.  *See*, *e.g.*, *Newell*, 424 B.R. 730; *Mercer's Enterprises, Inc. v. Seascape at Wrightsville Beach, LLC (In re Mercer's Enterprises, Inc.)*, 387 B.R. 681 (Bankr. E.D.N.C. 2008); *Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.)*, 56 B.R. 927 (Bankr. E.D.N.C. 1986).  If a bankruptcy judge, as an officer of the district court, can make a determination of whether to abstain from jurisdiction under 28 U.S.C. § 1334(c), then it follows that a bankruptcy judge can also make a determination of the appropriate venue for a personal injury tort or wrongful death claim under 28 U.S.C. § 157(b)(5).

The court finds further support for its conclusion that 28 U.S.C. § 157(b)(5) does not prevent a bankruptcy judge from having statutory authority to adjudicate a personal injury tort or wrongful death claim from the language of 28 U.S.C. § 157(c) which speaks to the authority of a bankruptcy judge to adjudicate a non-core proceeding related to a bankruptcy case.  When the

---

[11] This section provides that "[s]ubsection (b) or (c) of this section does not prevent a *district court or a bankruptcy court*, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.  Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise." Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 241(a), 92 Stat. 2549, 2669 (1978) (codified as 28 U.S.C. § 1471(d)), *amended by* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) (current version at 28 U.S.C. § 1334(c)) (emphasis added).

[12] This section provides that:
    (1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a *district court* in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
    (2) Upon timely motion of party in a proceeding based upon State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the *district court* shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
28 U.S.C. § 1334(c) (emphases added).

parties do not consent to a bankruptcy judge hearing and determining a non-core, related proceeding, then "any final order or judgment shall be entered by the *district judge* . . . ." 28 U.S.C. § 1334(c)(1) (emphasis added).  Congress's use of "district judge" rather than "district court" distinguishes that the Article III judge will be entering the final order or judgment rather than the Article I bankruptcy judge, because both type of judges are officers of the "district court." Therefore, an order of the "district court" made under 28 U.S.C. § 157(b)(5) could appropriately be made by either the district judge or the bankruptcy judge depending on which type of judge is presiding over the personal injury tort or wrongful death claim.

### The Malicious Prosecution Claim and the Dischargeability Claim are Together a Core Proceeding which the Court has Authority to Hear and Determine

Core proceedings which a bankruptcy judge may hear and determine include "determinations as to the dischargeability of particular debts."  28 U.S.C. § 157(b)(2)(I).  For the same jurisdictional reasons set forth *supra*, the act of liquidating the Malicious Prosecution Claim is integral to the Dischargeability Claim, thus liquidating the Malicious Prosecution Claim is statutorily core, and the court has authority to adjudicate this adversary proceeding under 28 U.S.C. § 157(b). *See Dambowsky*, 526 B.R. at 606 (citing *Van-Voegler v. Myrtle (In re Myrtle)*, 500 B.R. 441, 446 (Bankr. W.D. Va. 2013)). *See also Huang*, 509 B.R. at 754 (holding that determination of existence and scope of the debtor's liability and the creditor's right to payment of a non-dischargeable claim is core).

Core proceedings also include the—

allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate *for purposes of distribution* in a case under title 11.

23

28 U.S.C. § 157(b)(2)(B) (emphasis added).  If the Malicious Prosecution Claim is a personal injury tort claim as asserted by the Defendant, then liquidation of that claim *for purposes of distribution* is specifically excluded as core proceeding.  The court does not need to determine whether the Malicious Prosecution Claim qualifies as a personal injury tort claim,[13] because liquidation of the Malicious Prosecution Claim is not being requested for purposes of distribution but in connection with the Dischargeability Claim.   Further, even if the court does not have the unfettered authority to hear and determine the Malicious Prosecution Claim as a core proceeding under 28 U.S.C. § 157(b)(1), it may still hear and determine this claim under 28 U.S.C. § 157(c) if it is related to the Defendant's bankruptcy case and the parties consent to the court's adjudication.

*The Parties Consented to the Court Hearing and Determining the Malicious Prosecution Claim*

The court has already determined that the Malicious Prosecution Claim is related to the Defendant's bankruptcy case through the Dischargeability Claim.   Even if the Malicious Prosecution Claim is non-core, the court has statutory authority to hear and determine this related claim under 28 U.S.C. § 157(c), because both the Plaintiff and the Defendant consented to the court's adjudication.

At the time the Complaint and Answer were filed, the Federal Rules of Bankruptcy Procedure provided that "[i]n an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final

---

[13] While the court declines to rule on whether the Malicious Prosecution Claim is a "personal injury tort" claim within the meaning of 28 U.S.C. § 157, the court notes that this district does not limit the term to only those claims involving bodily injury. *See, e.g.*, *Moore v. Idealease of Wilmington*, 358 B.R. 248, 251-52 (E.D.N.C. 2006) (holding that civil rights actions brought under 42 U.S.C. §§ 1981 and 1982 constitute personal injury tort claims within the meaning of 28 U.S.C. § 157(b)(2)(B)).

orders or judgment by the bankruptcy judge." Fed. R. Bankr. P. 7008 (2014) (amended Dec. 1, 2016).[14]  In defense—

> [a] responsive pleading shall admit or deny an allegation that the proceeding is core or non-core.  If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge.  In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.

Fed. R. Bankr. P. 7012(b) (2009) (amended Dec. 1, 2016).[15]

The Plaintiff's Complaint contains a statement or allegation that this adversary proceeding is a core proceeding, and the Defendant specifically admitted this allegation in her Answer.  In the jointly submitted Final Pretrial Order, the parties expressly "agreed that this is a core proceeding pursuant to 28 U.S.C. § 157(c)(2) and agree that the Court may enter a final judgment . . . ."[16]  Beyond entry of the Final Pretrial Order, the parties fully litigated the Malicious Prosecution Claim at trial which the court considers an implied consent to it entering judgment.  The Defendant cannot rescind this consent a month after the trial which resulted in the pending judgment against her. *See In re Olde Prairie Block Owner, LLC*, 457 B.R. 692, 702 (Bankr. N.D. Ill. 2011) (citing *Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987)) (holding that debtor cannot undo consent when faced with unfavorable rulings and withdrawal of consent requires a motion and showing of good cause).  Regardless of whether the Malicious Prosecution Claim is merged with the Dischargeability Claim or stands alone as a non-core proceeding related to the Defendant's

---

[14] This rule now states that "[i]n an adversary proceeding before a bankruptcy court, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court." Fed. R. Bankr. P. 7008.

[15] This rule now states that "[a] responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court." Fed. R. Bankr. P. 7012(b).

[16] The parties are incorrect that 28 U.S.C. § 157(c)(2) provides the statutory basis for a core proceeding; rather, this provision allows for the bankruptcy court's adjudication of non-core, related proceedings if the parties consent.  The court interprets the parties' intent was to consent to the court adjudicating this adversary proceeding to the extent that any matters within it are non-core.

bankruptcy case, the court has authority to hear and determine the Malicious Prosecution Claim under 28 U.S.C. § 157(c)(2), because both the Plaintiff and the Defendant consented to the court entering final judgment.

<u>Constitutional Authority</u>

Finally, the court will consider whether pursuant to *Stern* it lacks the constitutional authority to adjudicate the Malicious Prosecution Claim.  Although the Malicious Prosecution Claim does not stem from the Defendant's bankruptcy or would be necessarily resolved within her no-asset Chapter 7 case, the court agrees with the United States Bankruptcy Court for the Middle District of North Carolina that *Stern* does not impact its constitutional authority to liquidate and enter judgment on this claim.  The *Dambowsky* court explained as follows:

> The *Stern* decision does not impact this Court's constitutional authority to hear Plaintiffs' claims because, unlike Stern, Plaintiffs' action is at heart seeking relief from the bankruptcy power discharging its alleged claim, and a complete determination of this relief will result in the liquidation of the underlying claims. Accordingly, *Stern* does not prevent this Court from liquidating Plaintiffs' claims.

*Dambowsky*, 526 B.R. at 605.

More importantly and unlike the debtor-defendant in *Dambowsky*, the Defendant consented to the court adjudicating the entire adversary proceeding, including the Malicious Prosecution Claim.  The Supreme Court recently held that allowing bankruptcy litigants to waive the right to Article III adjudication of *Stern* claims "does not usurp the constitutional prerogatives of Article III courts . . . [and] Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent." *Wellness Int'l Network, Ltd. v. Sharif*, ___ U.S. ___, 135 S. Ct. 1932, 1937, 1949, 191 L.Ed.2d 911 (2015).  If the Malicious Prosecution Claim is indeed a "*Stern* claim," a proposition which this court rejects, then the parties' consent of this court's adjudication gives it constitutional authority to do so.

## CONCLUSION

Having determined that it possesses subject matter jurisdiction over this adversary proceeding, as well as the statutory and constitutional authority to enter a final judgment, the court denies the Motion to Dismiss and will proceed with entry of judgment in favor of the Plaintiff; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED that the Motion to Dismiss be, and hereby is denied.

**END OF DOCUMENT**